JOSEPH DORWEILER v. JAMES CALLANAN and JAMES C. SAVERY, Appellants.

91  299
98  305

Recovery of Land Sold for Taxes: Limitation. Cutting and stacking hay on, and plowing fire breaks about wild land sold for taxes, by authority of the record owner, are acts of possession within Code, 902, which prescribes that actions to recover land sold for taxes must be brought within five years after the execution and recording of the tax deed; especially when the owner of the fee regularly paid taxes during the period of such occupancy.

SAME. That statutory provision has no application to wild, unoccupied prairie land.

*Appeal from Kossuth District Court.*—HON. GEORGE H. CARR, Judge.

TUESDAY, MAY 22, 1894.

PLAINTIFF, the owner of a patent title to a certain forty acres of land, brings this action to quiet his title as against the claims of the defendants. The defendants claim title under a tax deed to H. R. Snath,

executed and filed for record October 28, 1874, in pursuance of a sale made November 8, 1870, for the taxes of 1869, and a quitclaim deed from said Snath. Plaintiff alleges that said tax deed is void for the reason that said land was exempt from taxation for the year 1869. Plaintiff further alleges that he and his grantors have been in open, notorious, and adverse possession of the land, claiming title thereto since the year 1878; that neither the defendants nor their grantors have ever had possession, and never brought any action to recover said land; wherefore he claims that defendants are barred from asserting title under said tax deed. He also alleges the payment of all taxes by himself and his assigns, and asks that said tax deed and quitclaim deed be declared null and void, or, if this shall be denied, that he recover the taxes paid, with interest. Defendants answered, joining issue and setting up their said title by way of counterclaim, and that plaintiff had used the lands, and asking to be quieted in their title, and to recover for rents and profits. Plaintiff replied, joining issue on the counterclaim, and, upon trial, decree was entered in favor of the plaintiff, from which the defendants appeal.—*Affirmed.*

*J. J. Davis* for appellants.

*Parker & Richardson* and *Danson Bros.* for appellee.

GIVEN, J.—I. The plaintiff does not claim in argument that the land was not subject to taxation for the year 1869, nor do we think he could so claim, successfully, under the facts. No other objection is made to the tax deed, and we, therefore, accept it as valid. Section 902 of the Code provides that "no action for the recovery of real property sold for the nonpayment of taxes shall lie unless the same be brought within five years after the treasurer's deed is executed and recorded." This limitation expired October 28, 1879,

and the holder of the tax title could not thereafter maintain an action to recover the land from one in possession. Under his treasurer's deed, the tax purchaser acquired all the right of the former owner, the state, and county, and had a right to take possession of, or to bring an action to recover, the land at any time within said five years, but in this case the holders under the tax title did neither. The land was open, wild, unoccupied prairie, and the defendants claim that it remained so until after the expiration of the five years. If this is true, the tax purchaser had no occasion to take actual possession, as, under his deed, he was in the constructive possession of the land. *Coal Co. v. Blair*, 51 Iowa, 448, 1 N. W. Rep. 768. If the land was wild and unoccupied, and not in the actual adverse possession of another, there was no necessity for bringing an action to recover it, for, as said in *Francis v. Griffin*, 72 Iowa, 24, 33 N. W. Rep. 345: "He can thereafter have no occasion to take any action for the establishment of his right until it is disputed. Indeed, until the former owner does something to indicate an intention to dispute his title and ownership of the property, he has no cause of action against him." Plaintiff's claim is that, during the years 1878 and 1879, the land was openly, notoriously, and adversely occupied by one Phillip Dorweiler under parol permission from George A. Robbins, a non-resident of the state, and then owner of the fee.

Phillip Dorweiler, who resided near the land, testifies that in the summer of 1878 Mr. Robbins took dinner at his house, that he told Robbins that he had been trespassing on his land, and hoped he would not be offended. He says, "Oh no; that's all right. As long as I don't sell the land, you can have all the hay you want,—cut all the hay you want on it." He further states that, when about to leave, Mr. Robbins asked what his bill was. "I said: 'We will call that

even; you can claim that you got some benefit from your lands.' " After this conversation, Phillip Dorweiler cut hay on the land in 1878, part of which he hauled off at the time, and the balance he put in stack on the land, where it remained until the following winter and spring, when he hauled it away. He did the same in 1879, and each year plowed a fire break around the stack. It appears in the evidence that for years before, and for some time after 1879, it was the custom in that then sparsely settled part of the state for the settlers to go upon unoccupied lands to cut and remove hay, and to graze their stock, without the permission of the owner. So general was this custom, that to see a man grazing his stock or making and removing hay on open prairie was no indication that he made any claim to the land, or to possession thereof. Phillip Dorweiler had taken hay from this land without permission for a number of years prior to 1878, and it was for this that he hoped Mr. Robbins would not be offended. If the owner of the fee was in actual adverse possession, through Phillip Dorweiler, at and before the expiration of the five years, to wit, October 28, 1879, then the defendants are now barred from asserting title under the treasurer's deed, and the controlling question is whether the facts show such occupancy. The occupation must have been such as to indicate to the holder of the tax title an intention to dispute his title and ownership of the property. *Francis v. Griffin, supra.* The possession required to set in operation the statute of limitations is different from the possession which requires notice of the expiration of the period of redemption to be served. The one precedes the maturity of the tax title, while the other follows it; and, in the one, possession, whether with or without permission, calls for the notice, while the other must be adverse possession. Cases cited, defining what constitutes possession so as to require

notice for redemption, are not applicable to the question before us. Phillip Dorweiler acted under authority of the owner of the fee, and to the extent of that authority his occupancy was that of the owner.

It is argued that his authority was only to take hay, and not to stack it on the land, or to plow fire breaks. The authority to take hay carried with it the right to take it in the usual way. It is customary for those acting under authority to stack and protect the hay on the land, as was done in this case, although such was not the custom among trespassers on open land. This land in its then condition was not susceptible of any other occupancy or use than it had in 1868 and 1869. The presence of the stacks, remaining there for months, and the plowing certainly indicated to the observer more than a mere trespass. We think it indicated an intention to dispute the tax title, and was a sufficient possession to put the holder of the tax title on inquiry. We reach this conclusion the more readily, because owners of the fee regularly paid the taxes each year from 1873 to the commencement of this action in 1890, a fact, when taken in connection with the use made of the land, must have indicated to the defendants and their grantor, who never paid any of the taxes, that the fee owners were claiming the land. Our conclusion is that the decree of the district court should be AFFIRMED.